Our next case for argument is United States v. Park. Just to give a short background on the Park case, in this case, Ron and Mary Park are appealing the District Court's summary judgment in favor of the United States. And the United States is seeking here to enforce a recorded scenic easement held by the Forest Service on property that the Parks own. And it overlooks a particular area of the Clearwater River. The government says that the Parks' operation of a dog kennel and training business violates the easement provisions. The Parks argue that livestock, which is permitted on the property, can include a dog kennel. And that is the essence of the issues that you'll hear the attorneys arguing this morning. So we will first hear from the Parks Council. May it please the Court. My name is Linda Paul. I am from Moscow, Idaho. I represent Ron and Mary Park, who are from Kuski, Idaho, along the Clearwater River. I wish to reserve two minutes for rebuttal with your question. This case involves the reasonable interpretation of a scenic easement consistent with the purposes of the Wild and Scenic Rivers Act of 1968 and with the intent of the parties. We contend that the lower court improperly adopted and applied only state law in this case, which could produce a result that would be inconsistent with the purposes of the Wild and Scenic Rivers Act. The court's reliance on definitions in state statutes that have nothing to do with the purposes of the Wild and Scenic Rivers Act does not further the reasonable administration of the Act and easements written under it. Those statutes involve workers' compensation and unemployment insurance. In 1973, in one of the first property acquisitions to protect wild and scenic rivers across America, property owners along the Clearwater granted scenic easements to the federal government, specifically to the Forest Service, to further the goals of the Act. And if you look at the court record, item 17, page 7 of the excerpts of record, you will notice that these exhibits here show what the property was in 2005 on your right and in 1989 on your left. That almost two-acre piece of property that was part of the 95-acre piece of property that was the subject of that 1973 easement was in generally poor condition and, in fact, was basically feedlots. Today, the property is much more beautiful. It has been very much improved and does include kennels. Let me ask you, if I look at the easement, it says that, in effect, your clients have the right or they retain the right to use the easement for general crop and livestock farming. So I guess everybody agrees that the kennels aren't crops. But the question I have is on livestock farming, of course, the government says, well, livestock means things, you know, like cattle, et cetera, and doesn't include dogs. You argue that it can include dogs. If there's an ambiguity here, then it would go back and there would be a trial on what the parties intended, is that correct? Yes, Your Honor. Okay. So short of going back, what do you think are the acceptable sources for determining the meaning, if there is a plain meaning, of livestock? Your Honor, we believe that the court is well able to look at general definitions of livestock from the dictionary on out, to look at statutes under Idaho Code that would be relevant to land use issues, and certainly to federal interpretations of what farming is. And that's why, in our briefing, we asked that the court take a look at the Mikey case from the bankruptcy court in Kansas. But if the meaning is ambiguous, the meaning of the term livestock or livestock farming, is that your contention that it is ambiguous? Yes, Your Honor. If it is ambiguous, if the district court held that it was not ambiguous, then what the court should do is to determine the intent of the parties right at the time they entered into that easement. And presumably, you know, that would be subject to, you know, evidence of whatever the intent was. And all the arguments you're making have nothing to do with the party's intent, because we have no idea what the intent was, do we? Yes, Your Honor, we do. Where do you get that? From the whereases in the document itself. Well, if you can figure it out from the document, then it's not ambiguous. And the district court was correct that it's not ambiguous. Well, if that is the case, and we look to the intent of the parties, we look to the definition of what the purposes of the act are, which are recited in those whereas paragraphs, we know that the purpose of the act is to improve and to retain. But the purpose of the act is not the same thing as the intent, you know, of the party. For instance, let me ask you, just out of curiosity, have you talked to the owners of the property at the time the easement was granted? No, we have not. So you have no idea what they had in mind when they agreed to grant an easement? We have documents in the record. And they reserved livestock farming? Yes. What they were reserving? You don't know what they intended to reserve when they reserved livestock farming? We don't know that, the definition of livestock that they intended to apply. But from the circumstances surrounding the document, the fact that this was approximately $1,000 value for this particular two-acre piece of property out of the $49,000 that were paid to the original owners, we believe it's reasonable to assume under those circumstances that livestock should be interpreted in an ordinary language. Is there any animal that would not be livestock in your view? I believe that the court has found that fish are not livestock. Well, there is some case that says you can have a livestock farm to raise trout. That's true. You have a fish farm. That's right. My problem, just to make sure you address the problem in the full extent of the difficulty I'm having, is that it's not simply the word livestock. That is to say, if the easement specifies that you may keep livestock on your farm or keep livestock on your property, that's probably better. There's a pretty good argument that dogs are livestock in that setting. But the problem is harder for you because you're allowed to engage in livestock farming. And I'm having trouble fitting a breeding and kennel operation into the ordinary meaning of livestock farming. Could you help me with that? Recast the problem just a little. Thank you, Your Honor. I think that if you recast it that way, you get wonderful direction from the Mackey Court in the Kansas decision. Because that court says that the breeding, maintaining, and bringing to maturity of the animals, and their subsequent marketing, constitutes farming. Of any animal? I beg your pardon? Of any animal? The court did not restrict it and specifically said that there shouldn't be an exclusion from the Bankruptcy Code protection for Chapter 12 because these particular endeavors, and they were talking about dog kennels in that situation, are not found in the normal laundry list of Old McDonald's Farm. Do you want to save the remaining time for a rebuttal? Yes, please. All right, thank you. May it please the court. My name is Savina Case Hargrove, and I represent the United States on this matter. The question, the substantive question this case presents, is whether the district court correctly held that livestock farming, as used in the easement between the United States and the parks, allows for kenneling and raising dogs. The parks have, at this point, 19 kennels on their property. No, but the first, the underlying question is the district court's conclusion that that livestock farming was not ambiguous. That's correct, yes. Why don't you address that first? Okay, okay. The district court held that the term livestock farming was not ambiguous, and he was applying the parties agreed that Idaho law applies, Benninger versus Deerfield, and the court cited that. And so in interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties. If the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself, and extrinsic evidence is not admissible. So when we look at this easement, we have in Clause 2, just to put it in context so we can see what the judge was looking at, Clause 2, if property rights are a bundle of sticks, under Clause 2A, the Monroes, the park's predecessors in interest, gave away a very big stick, the right to develop any of the land for commercial purposes. But then in Clause C, the government broke off, if you will, a piece of that stick and gave it back to the Monroes and now to the parks. And the size of that piece is the question here. That piece is defined by Section C, which says that the grantors, their heirs and assigns, retain the right to use the easement for general crop and livestock farming. And retain is important there, because obviously we can't know from the four corners of the document exactly what was there before, but these people are retaining a right to do something they have done. Well, retain the right, they had an unlimited right before, not dependent on usage, dependent on right. They had an unlimited right. Right, but Clause A takes away their right to do anything commercial with the land, unless it's within their house. And then Clause C is giving it back, giving a little piece of that back. I'm not sure that's necessary to your argument, and I'm not sure it's necessarily true. That is to say, Clause A gives subject to, I'm not giving C. I'm not sure there's a giving and a re-giving. Okay, okay. So they retain the right to use the easement area for general crop and livestock farming, and for limited residential development, consistent with applicable state and local regulations. So, yes, so we have a situation here. We've got livestock farming, and we have one side saying, look at Webster's Dictionary, look at Chapter 12 of the Bankruptcy Code. There are very broad definitions of livestock farming there. They're taking very generic definitions. And then we have the United States saying, let's look at what livestock farming means in this context, and particularly in Idaho. The contract itself references state law a number of times, and obviously this is land in Idaho. So when the district court judge looked at this and said, livestock farming, that's not ambiguous, he naturally looked to Idaho law in support. But why does he have to look to Idaho law to interpret that? I mean, it is a federal, it's the Federal Scenic Rivers Act. We're trying to implement that. You're not trying to implement Idaho law, although the deed itself may be recorded pursuant to Idaho law. The terms of it are not necessarily governed by Idaho law, are they? That is correct. What we're looking for here is the common and ordinary meaning of livestock farming. Let me ask you, do you know what the meaning of farming is in the Internal Revenue Code? I don't off the top of my head. Well, what I'm suggesting is that a lot of times when we think of farming, you know, people think of a farm in the Midwest or out here in eastern Washington or Idaho. But, you know, the Internal Revenue Code and what would be permitted in order for you to deduct a farming operation, for example, is much broader than we might kind of intuitively think of. So that leads me to wonder if this isn't ambiguous. Why isn't it ambiguous here? Okay. Well, there are some particular reasons why applying state law in this context and under this statute makes sense here, too. And the Wild and Scenic Rivers Act is a very interesting act. It references cultural and historic values as some of the values it's trying to protect. And those values are going to be particular to each and every region that the rivers it designates are found in. It also encourages cooperative management with state and local governments in Section 1281E. And it expressly requires that unless owners consent otherwise, that regular uses, uses of property, up until the point an easement is negotiated, are grandfathered in. Furthermore, the mechanism that the Wild and Scenic Rivers Act uses to carry out its purpose is incredibly localized. It's not as though the federal government said in the Wild and Scenic Rivers Act, here are wild and scenic rivers, this is what you're going to do with them. To the contrary, it gave money to the Forest Service. The Forest Service then charged local representatives of the Forest Service to go out and meet with landowners along each and every river designated. So here, along the Clearwater, we've got 240 different easements that were negotiated with individual landowners between 1973 and 1986 that the United States government spent $3 million on. Well, if you look at Idaho law, I guess under your theory they could have an elk farm, a reindeer farm, and an emu farm, correct? Because those are included in some definitions of livestock that are in Idaho law. Would that be permissible? I'm not certain about those precise animals. I looked through the Idaho Code. There are 306 references to livestock. Well, let me just take it as a given that those are included among the 306, okay? Yeah. I can find out if I'm wrong, but they are included, okay? So if somewhere in the Idaho Code they list an animal, then in your view it would be okay to have that on the farm? Well, again, we're not just saying pick up Idaho law wholeheartedly and plunk it in here. We're saying look at all of Idaho law and other sources and see what livestock farming means. Okay, but the other sources, what if it's broader than the specific reasons that Idaho had to name specific livestock? Right. So you're saying not just Idaho law, but you can look at other sources like typically we often look at a dictionary, for example. The court is certainly free to do that. As I said, I think there are good reasons in this case, in this context, to look to state law. Okay, well, let me go back to the dictionary because if you look at Supreme Court cases, there's case after case that tells us that dictionaries are okay to look at, and Webster's Third International Dictionary says livestock is animals of any kind kept or raised for use or pleasure. Could that include a dog or a dog kennel? Absolutely. No, and I stand before you today. I know, so I'm just kind of like, you know, we're all getting educated on livestock here. Right, right. I stand before you today saying I think Webster's is wrong, and Judge Lodge clearly thought so, that it's too broad for this context. Okay, well, we can't call Mr. Webster and tell him that, but it's too broad. So then we're in this situation where, you know, judges have to make plain meaning determinations, and we're told to look at the dictionary, but what rule would you have us follow? I mean, how do we know this one to not look to this dictionary in this case as opposed to other cases? Well, in this particular context, we've got a statute that is mandating individual negotiation of contracts. So we have an individually negotiated contract that took place in Idaho under a statute that recognizes state law and local law. The contract itself references state law. Let me ask you a different question because your time is running. And I don't mean this in a facetious way, but I'm asking you, doesn't the Forest Service have better things to do than to enforce an easement against someone running a dog kennel operation that seems to have little or no visual impact? I mean, what's going on here? Apparently they were allowed to do it for a time. Then we get somebody else in here, and all of a sudden they aren't. I mean, what's behind this dispute? What's behind this dispute is this, and it's an excellent question because it was brought strategically. There are 240 easements, 240 separate easements, some common terms, but not very many. They are unique documents. And we have two people in a huge region charged with doing tons of things. And they're supposed to enforce the easements. They have to deal with the Highway 12 that goes through. They have to deal with all the invasive species in the region. They have to deal with all the raptors that come through on the river. They are very, very busy. There are two of them. There are 240 easements. It's a small community. Which makes my question all the more pointed. With all those things to do, why are you going after these people for these dogs? It's a small community. And if people are not voluntarily complying and submitting requests to the Forest Service, the United States will lose its easement rights. Whoever it is, did he consult legal counsel as to the definition of livestock farming in the easement, or did he make that decision on his own? Do you know? The person who originally negotiated the contract? No, the person who's enforcing it now. Yes, they are in consultation with Forest Service counsel. So you're telling me the Forest Service counsel gave them a legal ruling that they believe, in their opinion, livestock farming excludes the dog kennel? I don't know about a legal ruling, but I can tell you in Idaho, yes, everyone in the Forest Service does not believe that dogs are included in the easement. How do you know what you can do if you've got 346 places in the Idaho Code where there's some reference to livestock? You know, dogs is basically the tip of the iceberg. How does somebody know what they can and can't do? Yeah, the way it works practically, and I was very interested by this, too, is that the Forest Service people are within the community, and they regularly consult with people. And you'll see in the record there are examples where people were interested in buying land, and they will ask the Forest Service, hey, I'm interested in starting this business. Would that be a permissible business? So Ranger Rick gets to decide what's wildlife, basically. People gave away a huge part of their dogs. Well, I mean, that's my question. Some local Forest Service representative determines what's wildlife? Well, it's more complicated than that because within the Forest Service they have a process. They've got a five-member panel. They get advice and so on, and then the ranger ultimately makes the decision. But, yes, with the easements, and they are all different. But what is the basic objection? Is it because it's unsightly or, you know, because it smells? Do you know what the basis of the objection is, as a matter of fact? The problem is that it's under the easement, and the Forest Service is charged with enforcing the easement. They're not given discretion in terms of, you know, let's look aside on some cases and let's enforce it on others. Under the easement, the parks are only allowed to engage in commercial activity outside of their home if it falls within livestock farming or general crop farming. So to answer my question, what's the basis of the objection? Do the neighbors complain? What is it? Do you know? The basis of the objection is that they're in violation of their easement. I know, but for years, you know, they were doing the same thing. Well, that's actually a matter of dispute. I know, but why did it come up now? Did the neighbor complain? The Forest Service says, well, it really stinks around here or something? Oh, you know, it's unsightly. You know, they're building a high-rise kennel. What is it? Do you know? My understanding is that when the new ranger came in, she'd been there for a number, at least some time, and then she realized that there were advertisements in a local newspaper for a commercial operation on land, which she then looked into and realized the Forest Service has an easement on that land precluding just such operations. So when she noticed that, she then notified the parks. When you say commercial operation, you mean like dogs for sale? Is that what you mean? When you say commercial operation? Well, they were advertising breeding, kenneling, and, you know, commercial boarding of dogs and that sort of thing. But if you had a horse farm, you'd do the same thing, right? You know, you'd advertise, you know, horses for sale, boarding horses, whatever it is. And you could have a horse farm, right? Yes, you could. You have a llama farm. By the way, have you ever seen a real commercial poultry farm? Yes. Which is okay, right? No, actually. Because it's a farm. Poultry is not considered livestock. In where? It wouldn't be that poultry wasn't livestock. That would actually be a very interesting point. That's not considered livestock where? Pardon? It's not considered livestock where? Because it's a fowl? Yes, yes. In Idaho, livestock is really, it's very important to the state. They have laws dating back to when Idaho was a territory. So you're saying it's a matter of Idaho law now? How about a pig farm? Things with legs. Yes. What Idaho makes exceptions for, Idaho defines livestock as? But it doesn't matter what Idaho says. What we're after is construing an easement. Absolutely. Absolutely. And it does matter what Idaho says. Our time is ending, so why don't we have one more question? I've got a different question, which is, this strikes me as a case that might be mediated. Have you tried the mediation service for the Ninth Circuit on this question? Yes. We tried that, and then we also tried to mediate below. And apparently without success. That's correct. So far. Well, there was some success. They removed some of the signs. This was a broader dispute to start with, so it narrowed the dispute. But, right, we've tried. You've been to mediation. All right, let's hear from the Parks Council. Thank you. I apologize for the time it takes me to. No, we have plenty of that time. Your Honor, first, I would like to suggest that counsel is incorrect. We asked that we use the Ninth Circuit mediation services, and the government refused. We did use the mediation service. We did offer and agree to mediation, and we did mediate to the extent of the joint motion for summary judgment in the district court. But the government did not agree to mediate in the Ninth Circuit, though we had asked. So you had no mediation. Just to make it clear, you had no mediation here in the Ninth Circuit. That's correct. And, Your Honor, I would also direct the court's attention to the irony that develops if one says that commercial operations are not permitted, except if the commercial operation can be conducted within the structure, the residential structure on the property. Well, how is one going to have a feedlot or a horse farm in the house? That certainly doesn't make any sense whatsoever. Unless you move out or something. Yeah, exactly. And that's not part of the plan. So I guess the argument might be, is there anything different going on with respect to these animals? I'm trying to transpose horse and dog. It sounds as though everything that's being done with these dogs could be done if these were horses. That's correct. So the question is whether or not dogs are somehow not within the scope of the easement when those big horses can be within the scope of the easement. That's right. Or those little dogs. And, Your Honor, when the purpose of the easement is to reduce the impact on the land so that essentially the Clearwater River and the scenic values, all of them are aided there, how can ‑‑ it simply does not compute. Also, Your Honor, you mentioned or counsel mentioned that there are some 240 property owners here. The next door property owner has a kennel, has a similar easement to the one that we're talking about. A lot of this easement is, in fact, boilerplate, and if you were to ‑‑ Your time has expired, so would you want to conclude, please? Thank you, Your Honor. Thank you. Thank you to both counsel of an interesting and novel case. The case of United States v. Park is submitted. Our next case for argument is Salmon Spawning v. Gutierrez.
judges: Tashima, McKeown, Fletcher